UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DALE MICHAEL BOWERS, : | Case No. 1:11-cv-898 |
| : | Bankruptcy Case No. 1:10-ap-1188 |
| Appellant, : | |
| : | Judge Timothy S. Black |
| vs. : | |
| : | |
| RODNEY ROGERS, : | |
| : | |
| Appellee. : | |

**DECISION AND ENTRY REVERSING THE DECISION OF THE
BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS**

This case is before the Court on appeal from the United States Bankruptcy Court for the Southern District of Ohio. This Court has jurisdiction pursuant to 28 U.S.C. § 158 and Federal Rule of Bankruptcy Procedure 8001. Appellant Dale Michael Bowers ("Bowers") and Appellee Rodney Rogers[1] ("Rogers") both filed briefs. (Docs. 3, 4). Appellant also filed a Reply. (Doc. 5). This appeal is ripe for decision.

**I. BACKGROUND**

Appellant Dale Michael Bowers ("Bowers") owned a parcel of real estate on Blazer Road in Highland County, Ohio. After Bowers subdivided the real estate, Appellee Rodney Rogers ("Rogers") approached Bowers about purchasing a five-acre parcel of the subdivided land. Rogers alleges that he paid $15,000 in cash to Bowers for the five-acre parcel. According to Bowers, Rogers requested that Bowers construct a pole

---

[1] Rogers died on November 26, 2010, and Gaylord Otterbacher, the executor of Rogers' estate, was later substituted as Plaintiff.

barn on the property and agreed to make a down-payment of $15,000 for the property, plus Bowers' labor and material for construction of the pole barn. According to Bowers, the parties agreed that Rogers would be given the deed to the property only after he paid Bowers in full for construction of the pole barn. Unfortunately, the parties failed to place any terms of this transaction in writing.

Despite the lack of a writing confirming the real estate transaction, the parties went forward with the oral agreement in reliance on the oral promises to perform. During construction of the pole barn, Rogers began digging the foundation for a home on the property and asked that Bowers construct the home in addition to the pole barn. According to Bowers, the parties agreed that Rogers would pay Bowers for his materials and labor in constructing the home, and that Bowers would tender the deed to Rogers after Rogers paid Bowers in full for construction of the pole barn and the home. Again, the parties did not place this agreement in writing. Nevertheless, the parties performed some of their obligations under this amended oral agreement, *i.e.*, Bowers constructed the home, and Rogers paid Bowers for some of the work and materials.

Bowers completed construction on the pole barn and the home by the end of 2002, at which time Rogers owed $8,125.14, an amount Bowers alleges remains unpaid. Rogers contends that he paid Bowers in full. Because Bowers believed Rogers owed him money for labor and materials, Bowers never tendered a deed to Rogers, though Rogers continued to live on the property until 2007. According to Bowers, he paid for insurance, taxes and certain utilities for the property throughout the entire time Rogers lived on the

property and was never reimbursed for these expenses.

At some point in 2006, Rogers allegedly began threatening to kill Bowers if Bowers did not tender a deed to the property. After learning of Rogers' threats, Bowers presented Rogers with a bill for $17,697.77, an amount Bowers contends Rogers owed for work, materials, taxes, insurance, utilities, and 10% interest. Rogers apparently responded that he had no money to pay. Because of Rogers' threats, Bowers wanted the property out of his name. Bowers' father, Lloyd Bowers, suggested that the property be transferred to him so that he could deal with Rogers directly. Lloyd Bowers and Rogers were longtime friends. In March 2007, Bowers transferred the property to his father.

Approximately one month later, Bowers' father mortgaged the property for $100,000, in part, in an effort to pay Bowers what he was owed for work and materials on the Blazer Road property. Although claiming he was only owed $17,697.77 from Rogers, Bowers received approximately $60,000 to $70,000 of the mortgage proceeds. Bowers' father spent the remaining $30,000 to $40,000.

Neither Bowers nor his father informed Rogers of the mortgage on the property,[2] and Bowers' father testified that he fully intended to repay the loan. Subsequently, however, Bowers' father failed to make payments because he was unable to work and the property was foreclosed.

## II. PROCEDURAL HISTORY

---

[2] Rogers learned of the mortgage via solicitation mail from a mortgage lender offering a better deal. Learning of the mortgage apparently sent Rogers into a rage wherein he literally took a chainsaw and sawed the home and pole barn in half. Rogers faced criminal charges for his conduct and was ordered to stay away from the property.

In 2008, Rogers filed an action in the Highland County, Ohio Court of Common Pleas against Bowers and his father alleging fraud and unjust enrichment. The Highland County Court of Common Pleas subsequently granted summary judgment in favor of Bowers on the fraud claim, concluding that such a claim was barred by the applicable statute of limitations. The court, however, concluded that Rogers' unjust enrichment claim survived summary judgment and should proceed to trial. The record before this Court reveals no final order in the state court action.

Thereafter, Bowers and his father instituted bankruptcy proceedings. Rogers filed this adversary action against Bowers, his father and the mortgage lender. Rogers' Complaint in the adversary action alleges claims of fraud and a claim asserting that the Bowers engaged in a pattern of corrupt activity pursuant to Ohio Rev. Code § 2923.32(A). Rogers contends that Bowers is indebted for not only actual damages, but also triple damages,[3] and that such debts are not dischargeable pursuant to 11 U.S.C. § 523(a). The Bowers moved for summary judgment arguing that Rogers failed to plead fraud with sufficient particularity and, nevertheless, the fraud claim was barred by collateral estoppel.[4]

In its Decision on the Bowers' Motion for Summary Judgment, the Bankruptcy

---

[3] Ohio Rev. Code § 2923.34(E) states that persons "directly or indirectly injured by conduct in violation of section 2923.32 of the Revised Code or a conspiracy to violate that section . . . shall have a cause of action for triple the actual damages the person sustained."

[4] The record before the Court reveals that the order of the state court is an interlocutory order and clearly contemplated trial on the unjust enrichment claim. "[I]nterlocutory orders cannot be the basis for res judicata or collateral estoppel." *Moran v. Svete*, 366 F. App'x 624, 629 (6th Cir. 2010) (citing *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458 (6th Cir. 2003)).

Court appears to have agreed with the Bowers and applied collateral estoppel as a bar to Rogers' fraud claim. The Bankruptcy Court made no finding with regard to Rogers' claim asserted pursuant to Ohio Rev. Code § 2923.34. Instead, although Rogers never moved for summary judgment, the Bankruptcy Court granted summary judgment in his favor, concluding that: (1) the Bowers "committed a conversion" of Rogers property by mortgaging it and splitting the proceeds; (2) Rogers was damaged as a result of the conversion in the amount of $100,000,[5] and (3) the Bowers' actions underlying the conversion were willful and malicious, rendering the $100,000 debt nondischargeable.

Dale Bowers filed a Notice of Appeal from the Bankruptcy Court's Decision on November 3, 2011.[6]

### III. STANDARD OF REVIEW

Pursuant to Bankruptcy Rule 7056, Rule 56 of the Federal Rules of Civil Procedure "applies in adversary proceedings." A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[5] A bankruptcy court may properly determine damages in a discharageablilty proceeding under § 523. *In re McLaren*, 3 F.3d 958, 965-66 (6th Cir. 1993).

[6] While the Bankruptcy Court's Decision concluded that "an award of $100,000 to plaintiff, from defendants, jointly and severally, will be granted by separate order[,]" no separate order appears in the record or is reflected on the docket sheet made part of the appeal. It is unclear from the record whether the Bankruptcy Court contemplated further proceedings, including a separate consideration of Rogers' claim asserted pursuant to Ohio Rev. Code § 2923.34 and Rogers' request for triple damages under that statute. Even assuming the Bankruptcy Court's Decision is not a final order, this Court would choose to exercise its discretion and consider the appeal sua sponte pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8003(c).

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)(2)).

## IV. ANALYSIS

Appellant Dale Bowers argues that the Bankruptcy Court erred by granting summary judgment in favor of Rogers, the non-movant, absent notice and an opportunity to respond. Further, Bowers contends that genuine issues of material fact remain.

Courts may grant summary judgment to a non-movant, but before doing so, the court must give "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f); *see also Delphi Automotive Systems, LLC v. United Plastics, Inc.*, 418 F. App'x 374, 379 (6th Cir.

2011) (stating that a *sua sponte* grant of summary judgment may be entered only "'in certain limited circumstances, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence'") (citations omitted). Granting summary judgment *sua sponte* is not favored in the Sixth Circuit. *Delphi Automotive*, 418 F. App'x at 379 (citation omitted). Nevertheless, to prevail on appeal, "[t]he party against whom sua sponte summary judgment has improperly been entered must [also] . . . demonstrate prejudice in order to obtain relief on appeal." *Id.* (citations omitted).

Here, the Bankruptcy Court never provided notice that it would consider entering summary judgment in favor of Rogers and determine damages.[7] The Court concludes that this failure to provide notice and opportunity to respond prejudiced Bowers because a number of issues remain with regard to a claim of conversion,[8] including the extent of damages.[9] Because neither party had notice of the Bankruptcy Court's intent to

---

[7] Rogers never even argued the absence of disputed facts, and, instead, contended that "[a] reasonable jury could also find that these actions were 'willful and malicious' injury to Rodney's property, under [§ 523](a)(6)."

[8] The Court has concerns as to whether conversion is an available claim in this case. Generally, "real property is not a proper subject matter for a conversion claim." *First Fed. Bank v. Angelini*, No. 3-07-04, 2007 WL 4090767, *3 (Ohio App. Nov. 19, 2007); *see also* 18 Ohio Jur. 3d Conversion and Replevin § 7. In addition, a conversion claim cannot be asserted with regard to unidentifiable intangible property. *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1012 (Ohio App. 2003) (citations omitted). Thus, "[m]oney may be converted when it is identifiable and there is an obligation to return the specific money in question." *Tinter v. Lucik*, 876 N.E.2d 1026, 1033 (Ohio App. 2007).

It is unclear to this Court whether Bowers purportedly "converted" the Blazer road real estate, which would not be a cognizable conversion claim under Ohio law, or whether Bowers' "converted" Rogers' equity interest in the real property, which would require that such intangible interest be identifiable to justify a conversion claim.

[9] "Conversion is an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another." *Keybank Nat'l Assoc. v. Guarnieri & Seacrest, PLL*, No. 07CO 46, 2008 WL 5124562, *3 (Ohio App. Dec. 2, 2008) (citations omitted). To prevail, plaintiff must prove "'(1) plaintiff's ownership or right to possession of the property at the time of the

-7-

determine damages on summary judgment, neither party presented any argument regarding damages or pointed to specific evidence of damages. While Bowers' father mortgaged the property for $100,000, this figure does not necessarily represent the value of the property or Rogers' equity interest in the real property at the time of the purported conversion.

Even if no issues remained concerning Bowers liability for conversion, issues of fact do remain concerning dischargeability under 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" To block discharge of a debt using § 523(a)(6), the creditor must show that the subject debt arises from "an injury that is both willful and malicious" and "[t]he absence of one creates a dischargeable debt." *In re Markowitz*, 190 F.3d 455, 463 (6th Cir. 1999).

According to the Supreme Court, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Malice, as used in § 523(a)(6), requires some act done "in conscious disregard of the debtor's duties or without just cause or excuse." *In re Angelilli*, 463 B.R. 37, 41-42 (Bkrtcy. N.D. Ohio 2012) (citation omitted).

---

conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'" *Id*. (citation omitted).

As noted by the Sixth Circuit, "[t]he willful and malicious standard is a stringent one, and 'debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).'" *In re Best*, 109 F. App'x 1, 4 (6th Cir. 2004) (citing *Kawaauhau*, 523 U.S. at 64). "[U]nless the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a willful and malicious injury as defined under § 523(a)(6)." *Id*. (citing *In re Kennedy*, 249 F.3d 576 (6th Cir.2001) (citation and internal quote omitted)).

Here, in concluding that Bowers willfully and maliciously converted Rogers' property, the Bankruptcy Court relied upon the Sixth Circuit's language *In re Best*, stating that "[d]ebts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." *Id*. at 5.

Courts have not construed this language as a *per se* rule that debts arising from all claims of conversion are non-dischargeable under § 523(a)(6). *See In re Pixley*, 456 B.R. 770, 789 (Bkrtcy. E.D. Mich. 2011) (declining to find all acts of conversion willful and malicious *per se* and concluding that the language in *In re Best* concerning conversion was *dicta* because the debt at issue in that case "did not involve conversion"); *see also In re Gurzynski*, 443 B.R. 777, 780 (Bkrtcy. N.D. Ohio 2010) (noting that "a finding of conversion made under state law does not, standing alone, preclude a party from litigating in a bankruptcy court the issue of malicious intent for purposes of § 523(a)(6) . . .

[because] the mere act of conversion does not create a nondischargeable debt per se").

This Court agrees that a debt arising from a conversion is not willful and malicious *per se*. In Ohio, "[i]t is not necessary for the plaintiff to show wrongful purpose or intent by the person charged with conversion" and, in fact, "[t]he person so charged may be acting under misapprehension or mistake and still be guilty of conversion." *Fulks v. Fulks*, 121 N.E.2d 180, 182 (Ohio App. 1953).

Here, genuine issues of material fact remain as to whether Bowers truly intended to injure Rogers. Bowers testified that he honestly believed that he was entitled to hold title to the Blazer Road property and continued to own the property until paid in full by Rogers. *See In re Glenn*, 470 B.R. 731, 738-39 (Bankr. M.D. Penn. 2012) (finding a genuine issue of material fact as to whether debtor's action in converting fixtures was willful and malicious where debtors testified "that they held a sincere belief, however misguided, that the items they removed were their personal property and were not subject to the terms of the Mortgages").

In addition, Bowers testified that, after Rogers threatened to kill him, he transferred the property to his father only because he did not want to deal directly with Rogers anymore. Bowers' father, who had been friends with Rogers for years, offered to take the title and to deal with Rogers instead. There is also an issue of fact as to whether Bowers knew his father intended to mortgage the property. Bowers' father provided

essentially the same testimony.[10]

Finally, Bowers' father stated that he always intended to pay back the mortgage loan, and, in fact, actually made payments until he was unable to work. Bowers' father also testified that he planned to tell Rogers about the mortgage and "figured [they] would work it out" until he "heard that [Rogers] was laying in the house waiting on [him]," intimating that Rogers would attempt to hurt him if he came to the home.

Based on all of the foregoing, genuine issues of material fact remain.

## V. CONCLUSION

Accordingly, the Decision of the Bankruptcy Court is **REVERSED**, and this case is **REMANDED** for further proceedings.

**IT IS SO ORDERED**.

Date: 9/10/12                   s/ *Timothy S. Black*
                                                 Timothy S. Black
                                                 United States District Judge

---

[10] The deposition of Lloyd Bowers was not originally part of the record on appeal. Nevertheless, the Court takes judicial notice of his deposition and supplements the record. *See Musilli v. Droomers*, 398 B.R. 447, 453 (E.D. Mich. 2008) (stating that, not only is "[a] district court . . . authorized to supplement the record in a bankruptcy appeal, and to take judicial notice of appropriate evidence[,]" it "may also take judicial notice of proceedings before other federal courts and state courts of record").